IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KARIN F.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 4:21-cv-00028-RRB <br><br> **ORDER REMANDING FOR PAYMENT OF BENEFITS** <br> **(Docket 17)** |

## I. INTRODUCTION

Claimant, Karin F., filed an application for Social Security Disability Insurance benefits on April 30, 2015, alleging disability beginning March 31, 2012.[2] Claimant exhausted her administrative remedies and previously sought relief from this Court before Chief Judge Sharon Gleason.[3] Judge Gleason found that the Administrative

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/ files/18-cv-l-suggestion_cacm_0.pdf.
[2] Tr. 62–75.
[3] *See* Case 5:19-cv-00007-SLG.

*Karin F. v. Kijakazi*                                                                                   Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits                                      Page 1
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 1 of 19

Law Judge's ("ALJ") prior decision contained harmful error, and remanded for further administrative proceedings.[4]

Upon remand, the ALJ again found Claimant was not disabled.[5] On appeal, Claimant again argues that the ALJ's determination that she is not disabled, within the meaning of the Social Security Act ("the Act"),[6] is not supported by substantial evidence and that the ALJ committed legal errors. Specifically, she contends that the ALJ failed to fully and fairly develop the record, failed to form an RFC to account for the limitations identified by Dr. McConochie, failed to call a vocational expert to address non-exertional limitations, and accordingly failed to meet the burden of proof at Step 5.[7] Claimant seeks a reversal of the decision and a remand for calculation of benefits.[8]

While the Commissioner agrees that this matter should be remanded, she argues that a remand for further proceedings is warranted because there are unresolved issues.[9] Specifically, the Commissioner seeks a remand with instructions for the ALJ to reevaluate the Claimant's RFC, obtain vocational expert testimony, develop the record, and issue a new decision.[10]

---

[4] Tr. 753–81.
[5] Tr. 699–10.
[6] 42 U.S.C. § 423; 42 U.S.C. § 1381.
[7] Docket 17 at 12 (citing 724).
[8] Docket 17.
[9] Docket 23.
[10] Docket 23 at 3.

*Karin F. v. Kijakazi*     Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits     Page 2
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 2 of 19

For the reasons set forth below, Claimant's Motion for Remand, as amended at **Docket 17,** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for payment of benefits.

## II. STANDARD OF REVIEW

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[11]

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[12] Specifically:

> An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[13]

---

[11] 42 U.S.C. § 423(d)(1)(A).
[12] 42 U.S.C. § 423(a).
[13] 42 U.S.C. § 423(d)(2)(A).

*Karin F. v. Kijakazi*     Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits     Page 3
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 3 of 19

The Ninth Circuit has articulated the five-step sequential process for determining whether a claimant is disabled.[14] At Step 1, the ALJ considers whether the claimant has performed substantially gainful activity since the alleged onset date. If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If not, the evaluation proceeds to Step 2. At Step 2, the ALJ determines if the claimant's impairment is "severe." If not, then the claimant is "not disabled," if so then the evaluation proceeds to Step 3. At Step 3 the ALJ considers whether the claimant's impairments "meet or equal" one of a list of specific impairments described in the regulations. If so, the claimant is "disabled" and the analysis ends. If not, then the ALJ determines the claimant's Residual Functional Capacity, ("RFC"), and the evaluation proceeds to Step 4. At Step 4, the ALJ considers whether the claimant is able to do any work that he or she has done in the past. If so, then the claimant is "not disabled." If not, then the evaluation proceeds to the fifth and final step where the ALJ considers whether the claimant is able to perform any other work in the national economy.

A claimant bears the burden of proof at Steps 1 through 4 in order to make a *prima facie* showing of disability[15] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at Step 5 to show that there are a significant number of jobs in the national economy that the claimant can do.[16] The Commissioner can meet this

---

[14] *Tackett v. Apfel,* 180 F.3d 1094, 1098–99 (9th Cir. 1999); *see* 20 C.F.R. § 404.1520.
[15] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[16] *Treichler*, 775 F.3d at 1096 n.1.

*Karin F. v. Kijakazi* Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits Page 4
Case 4:21-cv-00028-RRB Document 25 Filed 03/27/23 Page 4 of 19

burden in two ways: by the testimony of a vocational expert, or by reference to the Medical-Vocational Guidelines, commonly referred to as "the Grids" at 20 C.F.R. Pt. 404, Subpt. P, App. 2.[17] If the Commissioner meets this burden, the claimant is "not disabled" and not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and entitled to benefits.

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[18] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19] The parties agree that the ALJ opinion does not meet this standard.

### III. Background

**A. Factual**

Born on March 9, 1965, Claimant is now 58 years old. She alleges that she is disabled due to "cognitive losses from a subarachnoid hemorrhage (aneurysm) with

---

[17] *Tackett*, 180 F.3d. at 1099. The Grids present, in table form, a shorthand method for determining the availability and number of suitable jobs for a claimant, by categorizing jobs by physical-exertional levels, and a claimant's placement in the appropriate table depends upon four factors: age, education, previous work experience, and physical ability. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett*, 180 F.3d at 1101. For each combination of these factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category. However, an ALJ can only apply the Grids in cases where they accurately describe the claimant's limitations and not in borderline cases or in cases where the guidelines plainly do not consider the claimant's limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985).

[18] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 5
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 5 of 19

hydrocephalus that she developed April 1, 2000," at the age of 35.[20] She seeks benefits starting on March 31, 2012, at age 47.[21] She was 51 on her date last insured of September 30, 2016.[22] Claimant's work history, medical evidence, and functional reports all were considered and discussed by Judge Gleason, and will not be repeated at length here.[23] Briefly, medical records reflect that Claimant suffered a "subarachnoid hemorrhage" in April 2000. Shortly thereafter she began reporting problems with short-term memory. She underwent numerous medical examinations in the following years, consistently maintaining problems with her short-term memory. Testing in 2010 yielded a full-scale IQ score of 76, with Claimant's verbal learning scores "similar to those of individuals with severe brain damage."[24]

Meanwhile, in 2015 multiple non-examining agency physicians concluded that Claimant's ability to remember work-like procedures was *not* significantly limited, and that although she had moderate limitations in the ability to maintain attention and concentration, and to understand, remember, and carry out detailed instructions, that her ability to complete a normal workday and workweek was not significantly limited.[25] Another physician found that Claimant's "low average" verbal working memory was "a relative strength,"[26] which suggests significant deficits in other areas. Despite the

---

[20] Docket 17 at 2 (citing Tr. 45, 62, 478, 514, 606, 614, 624, and 632).
[21] In the Social Security context, age 47 is considered a "younger individual," while individuals age 50–54 are "approaching advanced age," and age 55 and over is considered "advanced age." 20 C.F.R. Pt. 404, Subpt. P, App. 2. §200.00(g) & (h).
[22] Tr. 62.
[23] *See* Tr. 759–78.
[24] Tr. 555.
[25] Tr. 67–74.
[26] Tr. 86.

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 6
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 6 of 19

foregoing, she was deemed capable of completing a normal workday and workweek if limited to simple, routine tasks.[27]

In March 2016 she was evaluated by William McConochie, Ph.D., a licensed psychologist.[28] He determined that Claimant's full-scale IQ score was consistent with the 2010 results in the "borderline range" at 77, with a processing speed index of 65 which was in the "mild retardation range."[29] Although Dr. McConachie acknowledged a history of alcoholism, he opined that Claimant did not appear to be malingering or inebriated.[30] While speculating that "chronic alcohol abuse may in part be responsible for this lower level of performance," he stressed that the lowest individual scores "may be symptomatic of her brain damage secondary to aneurysm."[31] He opined that her scores were inconsistent with her reported average high school grades, indicating a deterioration in her cognitive functioning since childhood.[32] He diagnosed **moderate to severe** impairments in understanding and remembering instructions, as well as sustaining concentration and attention, and engaging in appropriate social interaction.[33] Prognosis for improvement with respect to the brain damage was "poor" as 15 years had passed since the event, while progress with alcoholism was fair, but "may be limited secondary to her cognitive and memory problems."[34]

---

[27] Tr. 85–89.
[28] Tr. 555–61.
[29] Tr. 559.
[30] *Id.*
[31] Tr. 560.
[32] Tr. 559.
[33] Tr. 561.
[34] *Id.*

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 7
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 7 of 19

In 2018, when she was being treated at Kaiser Permanente,[35] several physicians saw Claimant and opined that she had "significant" cognitive deficits, including difficulty with executive tasks and short-term recall, poor verbal fluency (difficulty finding words), and performance of calculations.[36] She was described as "alert and oriented but unable to follow simple directions, doesn't give detail about health history when asked repeatedly," with "obvious processing concerns."[37] She was referred for a neurology evaluation for "progressively worsening memory loss."[38] Neurological evaluation ruled out dementia, and found that "she clearly has baseline deficits," and encouraged her to continue working on mental stimulation exercises.[39] She scored 16/30 on the Montreal cognitive assessment,[40] a screening tool for cognitive impairment.[41]

**B.    Procedural**

The first ALJ decision concluded, based on the 5-step analysis, that Claimant had a mild neurocognitive disorder, as well as a history of a moderate alcohol use disorder, but that she retained the RFC to perform "a full range of work at all exertional levels" limited to simple, repetitive, routine tasks. The ALJ found that Claimant was not disabled under the framework of section 204.000 of the Grids.[42]

---

[35] Claimant was hospitalized in 2018 for a colon obstruction and total colectomy secondary to diverticular abscess. Tr. 593.
[36] Tr. 598–09.
[37] Tr. 600.
[38] Tr. 605.
[39] *Id.*
[40] Tr. 607.
[41] The Court takes judicial notice of various internet sources which generally identify a score of 26 or above to be normal.
[42] Tr. 20–28.

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 8
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 8 of 19

During the first appeal, Judge Gleason noted that Dr. McConochie's 2016 examination showed borderline intellectual functioning and a processing speed index in the "mild retardation range," and that Dr. McConochie opined that Claimant's "moderate to severe impairments were psychologically-based problems that were likely to cause an employer to warn of dismissal or to dismiss the employee."[43] Judge Gleason found that Dr. McConochie's opinions regarding Plaintiff's mental limitations were supported in the medical record dating back to 2000 by both treating and examining medical providers, and concluded that the ALJ improperly rejected Dr. McConochie's opinion regarding Claimant's memory limitations.[44] Moreover, Judge Gleason explained the distinction between the characterization of Claimant's neurocognitive disorder as "mild" from having "mild" symptoms, based on the DSM-5. "Labeling a diagnosis as 'mild' does not preclude a severe or even a listing level impairment."[45] In short, Judge Gleason found that "**the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. McConochie's medical opinion and concluding that [Claimant] had no memory limitations. On remand, the ALJ shall reevaluate the weight to be afforded to Dr. McConochie's opinions**."[46] Judge Gleason also found error in the ALJ's RFC determination, as well as in the ALJ's choice to rely on the Grids instead

---

[43] Tr. 775 (citing Tr. 555–61).
[44] Tr. 776.
[45] Tr. 776–77. Indeed, Dr. McConochie diagnosed mild neurocognitive disorder, resulting in moderate to severe cognitive impairments. Tr. 561.
[46] Tr. 778.

*Karin F. v. Kijakazi* Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits Page 9
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 9 of 19

of calling a vocational expert, because the Grids "should not be used if they fail to 'accurately and completely describe the claimant's abilities and limitations.'"[47]

Upon remand, the ALJ reached the same conclusions as he reached in his first opinion.[48] The September 1, 2021, written opinion is virtually identical to the September 18, 2018, written opinion.[49] Substantively, the ALJ modified his consideration of Dr. McConochie's medical opinion from "little weight" to "some weight," without meaningful new analysis.[50] The ALJ again relied upon the Grids instead of calling a vocational expert, despite the District Court's instructions to the contrary. The ALJ further relied on Dr. Trimble's 2005 and 2012 notes that the *aneurysm* was cured, without acknowledging that the aneurysm and the memory issues were distinct conditions.[51]

## IV. DISCUSSION

In the five-step analysis, a claimant bears the burden of proof at Steps 1 through 4 in order to make a *prima facie* showing of disability.[52] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at Step 5.[53] Here, the Commissioner argues that Claimant has not met her burden to prove she is disabled, and therefore a remand for benefits would be improper. But Claimant argues that it is the Commissioner who has not met the burden at Step 5, and that a remand for benefits is the

---

[47] Tr. 779 (citing *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).
[48] Tr. 699–710.
[49] Tr. 699–10; Tr. 20–30.
[50] Tr. 707.
[51] Docket 17 at 14 (citing Tr. 514–15; 621–22).
[52] *Treichler*, 775 F.3d at 1096 n.1.
[53] *Id.*

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 10
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 10 of 19

only appropriate remedy. The ALJ having twice reached Step 5, the Court agrees that it is the Commissioner, and not the Claimant, who has failed to meet the burden of proof.

### A. ALJ Findings

Claimant has twice appeared before the same ALJ, who found at Step 1 that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 2012, through her date last insured of September 30, 2016.[54] The ALJ further found severe impairments at Step 2, including subarachnoid hemorrhage with craniotomy resulting in mild neurocognitive disorder and a history of moderate alcohol use disorder. He found that these severe impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."[55] Next, the ALJ found that Claimant's impairments did not meet or equal a listed impairment to warrant a finding of disability at Step 3.

The ALJ determined that Claimant retained the RFC to perform "a full range of work at all exertional levels" limited to "simple, repetitive, routine tasks."[56] He found it significant that Claimant worked after her injury until 2012, and that she was "able to do household chores, cook, shop for groceries, independently manage hygiene tasks, use the computer and internet, drive, and play 'brain games,' . . . [swim] for exercise" and use Facebook.[57] The ALJ omitted any discussion of Step 4, finding that Claimant's past relevant work was "not material because all applicable Grid rules . . . would direct a finding

---

[54] Tr. 702.
[55] *Id.*
[56] Tr. 704.
[57] Tr. 705.

*Karin F. v. Kijakazi*     Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits     Page 11
Case 4:21-cv-00028-RRB     Document 25     Filed 03/27/23     Page 11 of 19

of not disabled."[58]  Nevertheless, the ALJ went on to make a Step 5 finding that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," despite the absence of any vocational expert testimony.

**B.     Errors by the ALJ**

First, the ALJ's reliance on Claimant's activities of daily living in determining her RFC assessment was error.  The ALJ found Claimant's activities of daily living (such as preparing meals, performing chores, searching the internet, shopping, and driving) as evidence her overall functionality.[59]  But "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[60]  The ALJ did not explain how the aforementioned activities transfer to the demands of full-time work.

Next, the ALJ's findings that Claimant could perform a "full range of work at all exertional levels" while also limited to "simple, repetitive, routine tasks" is, at best, internally inconsistent.[61]  The ALJ's reliance on § 204.00 of the Grids suggests, without explicitly stating, that Claimant retained the capacity to perform "Heavy" exertional

---

[58] Tr. 709.

[59] All this despite Claimant's husband's written statements from 2015 and 2016 stating that she spends her day "running back and forth in between rooms trying to figure out what [she] was doing," lacks any attention span, and is unsafe driving alone. Docket 17 at 15 (citing Tr. 382–89, 415–22).

[60] *Fair v. Bowen*, 885 F.2d at 603.

[61] Tr. 704.

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 12
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 12 of 19

work.[62] But § 204.00 presumes that "the residual functional capacity to perform heavy work . . . represents substantial work capability for jobs in the national economy at **all skill and physical demand levels**," which does not accommodate the finding by agency decisionmakers who already had relegated Claimant to strictly **unskilled** work.[63] Section 204 also assumes that individuals who retain the functional capacity to perform heavy work **"ordinarily will not have a severe impairment or will be able to do their past work—either of which would have already provided a basis for a decision of 'not disabled.'"** But the ALJ did find that Claimant suffered from a severe impairment. Accordingly, the ALJ's reliance on § 204.00 is misplaced as it is unsupported by the ALJ's own findings, as well as by the findings of other agency decisionmakers.

Moreover, the Grids should be used to direct a finding of "disabled" or "not disabled" only if a claimant's RFC and vocational characteristics correspond precisely to the Grids.[64] Significant non-exertional impairments, such as Claimant's mental deficiencies, typically make reliance on the Grids inappropriate.[65] Where the Grids do not

---

[62] Maximum sustained work capability is generally determined to be Heavy, Medium, Light, or Sedentary. The Agency's Initial Disability Determination Explanation ("DDE") summarized Claimant's past work experience as a daycare worker, medical records assistant, teacher, security agent, and travel agent. Tr. 67. Normally, a vocational expert would have testified to identify whether each job qualified as Heavy, Medium, Light, or Sedentary, as well as the skill level. Somehow, both the Initial DDE and the DDE on Reconsideration concluded that Claimant is capable of Heavy work, despite the absence of any Residual Functional Capacity Assessment in the record. Tr. 73, 90.

[63] Tr. 73, 90.

[64] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

[65] "Non-exertional limitations are limitations that do not directly affect a claimant's strength. . . Non-exertional limitations include those 'mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations,' . . . that affect a claimant's ability to work." *Burkhart v. Bowen*, 856 F.2d 1335, 1340–41 (9th Cir. 1988) (internal citations omitted).

*Karin F. v. Kijakazi*                                                               Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits                                 Page 13
Case 4:21-cv-00028-RRB    Document 25   Filed 03/27/23   Page 13 of 19

accurately reflect the claimant's limitations, and would otherwise require a finding of not disabled, the testimony of a vocational expert is necessary.[66] In short, the ALJ provides no explanation as to how he concluded that Claimant could perform "heavy" work, and improperly applied the Grids to reach a finding of non-disability, where non-exertional limitations warranted the testimony of a vocational expert.

The Court also finds errors by the ALJ at Step 3, where the ALJ determined that Claimant did not meet or medically equal the severity of listed impairment 12.02, for Neurocognitive disorders.[67] In order to satisfy this listing, a claimant must meet the criteria of section A, and section B or C.[68] There is no dispute that Claimant's medical records indicate a significant cognitive decline in multiple areas, satisfying paragraph A.

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in <u>one</u> or more of the cognitive areas:
> 1. Complex attention;
> 2. Executive function;
> 3. Learning and memory;
> 4. Language;
> 5. Perceptual-motor; or
> 6. Social cognition.

The ALJ also considered the paragraph B criteria (emphasis added):

> B. **Extreme** limitation of one, or **marked** limitation of two, of the following areas of mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

---

[66] *Tackett*, 180 F.3d at 1101–02.
[67] Tr. 702.
[68] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

*Karin F. v. Kijakazi*     Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits     Page 14
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 14 of 19

The SSA has established a rating scale to evaluate the effects of a mental disorder on mental functioning, to determine whether a claimant can function "independently, appropriately, effectively, and on a sustained basis" in each these four areas. The scale includes *Mild* (functioning is slightly limited), *Moderate* (functioning is fair), *Marked* (functioning is seriously limited), and *Extreme* (inability to function).[69] The ALJ found that Claimant did not satisfy the B criteria, because "claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme limitation'" as required by the listing.[70]

But when considering the record, the ALJ gave the opinion of the sole examining physician who offered opinions regarding the B criteria only "some weight." The ALJ also failed to acknowledge that in considering the B criteria, Dr. McConochie only used a three-point rating scale, to include "*mild*," "*moderate*," and "*severe*,"[71] rather than the four-point scale articulated by the SSA of "*mild*," "*moderate*," "*marked*," and "*extreme*." Dr. McConochie's analysis also specifically focused on "work behaviors."[72]

The ALJ has had two opportunities to review Dr. McConochie's report, and to seek clarification from Dr. McConochie with respect to the rating scale. The ALJ declined to do so, instead taking Dr. McConochie's "moderate" work behavior impairment findings to be the equivalent of a "moderate" limitation in the SSA listings, which clearly are not apples-to-apples. While the SSA defines moderate impairment as "functioning is fair," Dr. McConochie described a moderate impairment solely in the employment context

---

[69] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).
[70] Tr. 703.
[71] Tr. 561.
[72] *Id.*

*Karin F. v. Kijakazi*                                                         Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits                                   Page 15
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 15 of 19

*Karin F. v. Kijakazi*      Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits      Page 15
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 15 of 19

as "likely to cause an employer to warn the employee that if behavior does not improve, dismissal is imminent."[73] Dr. McConochie's definition of a severe impairment was also linked to employment as "likely to cause an employer to dismiss the worker,"[74] while the SSA further distinguishes the most severe limitations between "marked" limitations, where "functioning is seriously limited," and "extreme" limitations amounting to an "inability to function."[75]

Dr. McConochie rated Claimant's ability to "understand and remember instructions" as *moderate to severe*; her ability to "sustain concentration and attention, and persist" as *moderate*; and her ability to "engage in appropriate social interaction" as *moderate*.[76] Based on Dr. McConochie's definitions of "moderate" and "severe," this Court interprets them as the rough equivalents of the SSA listings "marked" and "extreme." Regardless of the nomenclature, Dr. McConochie's evaluation of Claimant's impairments suggests that her "moderate to severe" limitations on his scale most closely align with "marked to extreme" limitations in the SSA listings. Having, therefore, found two cognitive areas with "marked" limitations, and one area that is "marked to extreme," Claimant more than satisfies the B criteria of listing 12.02. However, even if this Court did not find that Claimant met a listed impairment, it concludes that a remand for benefits, rather than a remand for further proceedings, is the appropriate remedy.

---

[73] Tr. 561.
[74] *Id.*
[75] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(F)(2).
[76] Tr. 561.

*Karin F. v. Kijakazi*                                                        Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits                                   Page 16
Case 4:21-cv-00028-RRB     Document 25     Filed 03/27/23     Page 16 of 19

**C.     Nature of Remand**

Where there is error in an ALJ's decision, the Court may remand the case for additional evidence or remand for payment of benefits.[77]  When making such a determination, the Court assesses whether further proceedings would be useful and whether outstanding issues are unresolved.[78]  Further administrative proceedings generally are useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[79]

More than four years have passed since the first ALJ hearing, and the District Court already has remanded this matter with specific instructions, which the ALJ declined to follow.  The Court could remand this matter again, repeating the instructions to the ALJ to properly weigh Dr. McConochie's opinion, to reconsider Claimant's RFC, and to call a vocational expert to testify regarding Claimant's ability to perform her past work or other work in the national economy.  But having already remanded once to do so, and the ALJ having failed to follow directions, the Court chooses not to do so again.  At this point, it is doubtful that additional proceedings would be useful. Claimant's alleged onset date is March 2012.  Her date last insured was September 30, 2016.  Were this Court to remand once again, there is no further development of the record that could speak to these dates.

Even if the Commissioner could convincingly argue that Dr. McConochie's three-point rating scale does not establish a listed impairment at Step 3, the ALJ has had

---

[77] *Trevizo v. Berryhill*, 870 F.3d 664, 682 (9th Cir. 2017).
[78] *Treichler*, 775 F.3d at 1105.
[79] *Id.* (citations omitted).

*Karin F. v. Kijakazi*  Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits  Page 17
Case 4:21-cv-00028-RRB   Document 25   Filed 03/27/23   Page 17 of 19

two opportunities to hold Claimant to her burden at Step 4 to show that she cannot perform her past relevant work. On both occasions, the ALJ has opted to "expedite" Step 4, concluding that Claimant has no past relevant work.[80] In so doing, the ALJ has affirmatively moved on to Step 5 of the analysis, concluding both times that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed."[81]

        Twice, the ALJ has reached Step 5 of the analysis, and despite instructions to the contrary, the ALJ has failed to call a vocational expert to establish what jobs exist in signification numbers in the national economy that the Claimant could have performed. Instead, the ALJ has relied on the Grids, despite instructions that the Grids are inappropriate when non-exertional limitations are at play. In short, the Commissioner has failed to meet the burden of proof, which shifted from Claimant to the Commissioner at Step 5. The Court declines to remand this matter, again, with instructions to the ALJ to consider the record for the third time. "[I]f we conclude that no outstanding issues remain and further proceedings would not be useful, we may . . . [find] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'"[82] Claimant's testimony was taken on August 3, 2018.[83] Therein she testified that she was not allowed

---

[80] Tr. 709, 738.
[81] Tr. 709, 739.
[82] *Treichler*, 775 F.3d at 1101 (citations omitted).
[83] Tr. 44–50. The ALJ took no testimony from Claimant on remand.

*Karin F. v. Kijakazi*          Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits          Page 18
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 18 of 19

to drive anymore, that she drove the wrong way on a street and almost caused an accident, that she was fired from or quit several jobs since her aneurysm for not learning fast enough or because of her memory. She testified that she could not live alone independently and take care of herself because her short-term memory is bad, and that her husband has to remind her constantly what she is supposed to be doing. The record also contains a number of function reports and letters from Claimant, as well as from her husband, mother, and sister, explaining that she has not "been the same" since her cerebral hemorrhage, that her memory has gotten worse over the years, and that her short-term memory is "close to nothing."[84]

The Court has reviewed the administrative record and finds that it is adequately developed. Moreover, the Court finds that the record, taken as a whole, leaves "not the slightest uncertainty" that Claimant is disabled.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's amended motion at **Docket 17** is **GRANTED** and this matter is **REMANDED** for payment of benefits.

IT IS SO ORDERED this 27th day of March, 2023, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

---

[84] Tr. 382–89, 415–22, 444–47, 458.

*Karin F. v. Kijakazi*     Case No. 4:21-cv-00028-RRB
Order Remanding for Payment of Benefits     Page 19
Case 4:21-cv-00028-RRB    Document 25    Filed 03/27/23    Page 19 of 19